**CONTINENTAL LUMBER COMPANY, Inc.,**
**Appellant,**

**v.**

**Warren DONALDSON, Appellee.**

**No. 16788.**

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 13, 1967.

Rehearing Denied Feb. 17, 1967.

Walter S. Fortney, Richard Owens, Fort Worth, for appellant.

Garrett & Garrett and Rufus Garrett, Jr., Fort Worth, for appellee.

OPINION

MASSEY, Chief Justice.

The question posed is one of contractual construction. Plaintiff Continental Lumber Company, Inc., sued defendant Warren Donaldson for damages because of the defendant's failure to return plaintiff's deposit of $2,500.00 advanced under provisions of an option contract entitling plaintiff to purchase real estate. Defendant contended that the time had expired within which plaintiff was entitled to unilaterally cancel the contract with return of the deposit, and that under the contract, as amended and extended, was entitled to refuse to purchase the land but forfeited the deposit.

Judgment was for the defendant and plaintiff appealed. We reverse and render such judgment.

■ But for the amendatory agreement of September 30th, 1964 there is no question but that defendant would have been entitled to prevail. The original contract was dated June 5, 1964. Thereby the defendant, in consideration of the plaintiff's $2,500.00, granted the option to expire at the end of 120 days with defendant to retain the deposit in the event the option was not exercised. During said period it was provided that the plaintiff would satisfy itself as to title defects and to raise title objections; and in the event of such would have the right to nullify the agreement and receive back its deposit or to waive title objections and enforce specific performance by the defendant.

Language of the original agreement material to our consideration read:

"First Party (defendant) * * * does hereby give and grant to Second Party (plaintiff) * * * right and option, exercisable by notice in writing * * * deposited for mailing not later than 120 days from the date of this agreement, to purchase * * * (property described).

"The purchase price * * * is $110,-000.00.

"The Second Party may extend this option agreement for an additional 120 days upon the payment of $4,000.00 for said extension 5 days prior to the expiration date of the original option.

"Second Party shall satisfy himself as to the condition of the title during the initial option period * * *.

" * * *

"First Party warrants that * * * there are no easements now existing affecting said property. In the event any easements are found * * * Second Party may elect to receive a refund of the option money and cancel this option agreement, if First Party is notified in writing prior to the expiration of the initial option period."

(Language following is upon premise that option to purchase is exercised, with provision made that in such event the $2,500.00 paid for the option should apply upon the total purchase price.)

Language of the amendatory agreement material to our consideration read:

"Whereas, it was agreed in said (original) Option Contract that the same should be exercised by Second Party giving notice in writing by registered mail * * * deposited for mailing not later than 120 days from the date of such Option Contract; and,

"Whereas, both First Party and Second Party desire and have agreed to change such period of time for the exercise of such option by Second Party from 120 days from date thereof to 150 days from date thereof:

"Now, Therefore, Know All Men By These Presents (that the parties) in consideration of the benefit to each from such extension of time, and the further consideration of the payment by Second Party to First Party of the sum of $10.00 in cash * * * do hereby agree as follows:

"1. The period of time designated in said Option Contract for the exercise of such option by Second Party is hereby changed from 120 days to 150 days from the date thereof, June 5, 1964, just as if 150 days had originally been written therein.

"2. In all other respects the terms and conditions of said Option Contract shall remain the same and unchanged."

Selection of language in and preparation of the original contract and extension agreement was by plaintiff and its attorneys.

Trial was before the court without a jury. The court heard parol evidence. Established thereby was the fact that during the initial 120 day period the plaintiff learned of circumstances suggesting that there might be title defects entitling it to cancel

the original contract, but that informed knowledge of existence of such defects (occasioning its ultimate decision not to purchase) was not acquired until after the amendatory agreement was executed. Also established was the fact that title defects which would entitle the plaintiff to cancel the original contract were existent.

In Findings of Fact and Conclusions of Law the trial court found that it was the intention of the parties in executing the second agreement to simply grant to plaintiff an additional 30 days in which to exercise the option and not change the original agreement in any other way. The court further found that it was the intention of the parties that the plaintiff's right to cancel the option agreement expired at the end of 120 days, and that their intention by executing the second agreement was to tie up defendant's land for an added 30 days and to give the plaintiff the sole right to buy it for that added period.

The trial court concluded: "I construe the two contracts to give the plaintiff the right to cancel the option agreement on the grounds of the existence of easements within the initial option period of 120 days and not after that time. * * * If it can be said that the two agreements executed by the parties are ambiguous and are susceptible of being construed in two ways * * * then the Court here must give the agreements the construction most favorable to defendant because such second agreement which gave rise to the problem was prepared by the plaintiff's lawyer."

The contracts, when considered together, suggest an ambiguity but it is our conclusion that the intent of the parties stands disclosed by language of the amendatory contract.

Certainly, it could not have been intended that it would be other than an intelligent exercise of the option for which provision was made. To have made such required that the plaintiff be fully informed as to title defects. It was not so informed before the expiration of 120 days of June 5, 1964, but was prior to the expiration of 150 days.

We have concluded that it would be unrealistic to believe and find that the parties, by the amendatory contract of September 30, 1964, merely intended that the plaintiff should have an additional 30 days time within which to agree to purchase the property (without payment of an additional $4,-000.00 for a 120 day extension) or forfeit its $2,500.00 deposit. We believe and find that the parties intended to extend for all purposes and for 30 days the "initial option period" mentioned in the original contract. That "initial option period" was a term of 120 days, and as extended became 150 days, from the original contract date of June 5, 1964. As provided by the original contract the plaintiff had time to satisfy himself as to the condition of the title "during the original option period". If we are correct in believing that it was "the original option period" which was extended it necessarily follows that plaintiff had the right for a period of 150 days rather than 120 days to reject the property by reason of title defects. Having exercised such right in proper time and manner it was entitled to judgment against the defendant for the return of its $2,500.00.

The defendant, by counter-point, contends that plaintiff was estopped from the recovery of the $2,500.00 because it attempted to sell the optioned property or portion thereof, after the discovery of title defects but before it served notice of its decision not to purchase. Such was plaintiff's right and its exercise (no sale effected) would not give rise to the doctrine of estoppel.

Judgment is reversed. Judgment is rendered for plaintiff Continental Lumber Company, Inc., against Warren Donaldson for $2,500.00 plus legal interest from October 26, 1964, and all costs of suit.